**UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 06-357 (CKK)** |
| | **:** | |
| **KHAN MOHAMMED** | **:** | |

**OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
OF MISSILES, THE TALIBAN INSURGENCY, TALIBAN CELLS, AND
ALLEGATIONS OF A PRIOR HISTORY OF DRUG TRAFFICKING**

The United States, by and through Matthew Stiglitz and Julius Rothstein, Trial Attorneys with the U.S. Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, respectfully opposes Defendant's motion in limine to exclude evidence relevant to Khan Mohammed's participation in terrorist activity and prior drug trafficking intertwined with terrorist activity.  Additionally, pursuant to the Court's direction, the government sets out the nature of the evidence concerning the inception of the investigation, and why the evidence surrounding it is admissible.  Lastly, while the government does not believe that the proffered evidence amounts to evidence requiring notice pursuant to Fed. R. Evid. 404(b), should the Court rule otherwise, then the government would request permission to treat this filing as notice, as there is little prejudice to the defense.

FACTUAL BACKGROUND

In August of 2006, the Drug Enforcement Administration (DEA) was approached by a police officer with the Afghan National Police, who introduced them to a Confidential Source (CS) who had information that he wanted to provide.  According to the CS, he had been summoned to a meeting with Abdul Rahman, a Taliban commander from Nangarhar Province then located in

Peshawar, Pakistan.  At this meeting, the CS was recruited, albeit involuntarily, to return to Afghanistan for the purpose of obtaining rockets to conduct attacks there.  When the CS complained that he had no knowledge concerning the use of rockets and engaging in these attacks, Rahman identified the defendant as his point of contact and someone who could help.  The CS returned to Afghanistan and reported this information to Afghan authorities.

In the period of time between his report of information to Afghan authorities and his meeting with the DEA, the CS had a meeting with the defendant at which the CS told him that he had been sent by Rahman to find missiles but wasn't sure he could find any.  The defendant told the witness that he was aware that Rahman was sending the CS, but that it would be up to the CS to obtain the rockets to build up trust with them.[1]

After meeting with the CS, the DEA, with the assistance of the local police, obtained 4 rockets with the initial idea that they would be provided to the defendant, who would then be arrested.  The CS was provided with a recording device, and asked to return to the defendant to tell him that he had obtained the rockets, and he did so.[2]  During the conversation, the defendant is heard discussing at length the rockets, where to hide the rockets, the plan for the use of the rockets, and his knowledge of and association with Abdul Rahman and Habib Zai, who was another Taliban commander from Nangarhar Province then living in Pakistan.  Of particular note are the following passages (where JW is the CS and KM is the defendant):

Line 25:     JW:    Look!  The fact that I agreed to this operation, I swear that I

---

[1]In addition to this information, the CS has indicated that during the time that the Taliban was in power in Afghanistan, the defendant had fought for the Taliban, and had led a small unit of men.

[2]A copy of the resulting transcript of this meeting is attached as Exhibit 1.

did this because of you. My friend, if you were not with me in here, I would not have done this work at all and I would have been working to earn my living. Based on the instruction of these people when they told me to work together with Khan Mohammed and I said Khan Mohammed is my long time friend. I said if Khan Mohammed keep my secret and I keep his secret. When two people work together they can do anything. . .

Line 26:    KM:    Yes . . .

Line 45:    JW:    You and Habibzai. You, Habibzai and Qari Abdul Rahman (all three) are together in this?

Line 46:    KM:    Abdul Rahman, Habibzai and our word [sic] are the same. We are his people and with him we make our program.[3]

Subsequent to this meeting, the plan concerning the provision of the rockets to the defendant was ultimately dropped out of security concerns, and so the rockets were later turned in to the DEA. The CS was instructed to tell the defendant that the rockets had been stolen, which he did in a recorded conversation. In several other conversations throughout the investigation the two men discussed what to tell Abdul Rahman and Habib Zai concerning the lack of rockets, arrangements for obtaining new rockets, as well as plans for their use.[4]

During the course of the investigation, the DEA agents asked the CS if the defendant was involved with drugs. The CS indicated that he was, and described the defendant's prior involvement in growing poppy and buying and selling opium as well as heroin that had been converted from his opium. With this understanding, the DEA asked the CS to return to the defendant, and request his

---

[3]"Program" is a euphemism for an attack.

[4]The defendant was provided with a draft copy of the transcripts of all of the recorded calls on or before January 2, 2008.

assistance in obtaining opium (and later heroin) for a purported customer.  The CS did this, and in this and other recorded conversations, the defendant acknowledged his experience in the drug trade, and often mentioned this as proof that he was knowledgeable and reliable as a drug broker, and could supply the witness with any amount of opium or heroin that he needed.[5]

After the conclusion of the investigation, the defendant was arrested.  He was questioned by the DEA, and admitted to the agents that he had previously grown poppy, and that on occasion he had sold opium.[6]

ARGUMENT

I.    The government's evidence is not excludable under Fed. R. Evid. 401, 403, or 404(b).

The Defendant proceeds from a fundamental misunderstanding of 21 U.S.C. § 960a, which criminalizes precisely this type of activity under the concept of "narco-terrorism."  Because the defendant's drug trafficking and his participation and support of a terrorist/terrorist activity are elements of § 960a, the evidence he challenges is not "other crimes" evidence but, rather, is relevant evidence of *the charged crime*.  Nor is the evidence excludable under Fed. R. Evid. 403 as prejudicial merely because it is damaging evidence of his guilt.  Accordingly, the government was not obligated to provide notice of the evidence, which defendant received by January 2, 2008, and this evidence is not excludable under Fed. R. Evid. 401, 403, or 404(b).  For the reasons explained more fully below, defendant's motion in limine should be denied.

---

[5]At the status hearing on April 30, 2008, the defense stated that they were not seeking redaction of the various recordings at issue.

[6]A copy of the DEA report recounting the substance of the interview was provided to the defendant on the date of his initial arraignment- November 5, 2007.  At the April 30, 2008 status hearing, the defense stated that they were not seeking to preclude the government from using this statement.

A.     The Evidence is Relevant Under Fed. R. Evid. 401

Although defendant combines his arguments under Rules 401, 403, and 404, the government will address each issue independently. It is essential, in any analysis under these rules, to begin with the elements of the charged crime. Section 960a, enacted in March 2006, provides that:

> Whoever engages in conduct that would be punishable under section 841(a) of this title if committed within the jurisdiction of the United States, or attempts or conspires to do so, knowing or intending to provide, directly or indirectly, anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity (as defined in section 1182(a)(3)(B) of Title 8) or terrorism (as defined in section 2656f(d)(2) of Title 22), shall be sentenced to a term of imprisonment of not less than twice the minimum punishment under section 841(b)(1) of this title, and not more than life, a fine in accordance with the provisions of Title 18, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subsection shall include a term of supervised release of at least 5 years in addition to such term of imprisonment.

21 U.S.C. § 960a. Thus, the elements of this crime include: (1) commission of a drug-related crime punishable under 21 U.S.C. § 841(a); (2) the direct or indirect provision of anything of pecuniary value; (3) to a person or organization who has engaged in or is engaging in terrorist activity.

Given the elements of § 960a, defendant's arguments regarding relevance, Mot. at 3, are simply untenable. In order to meet its burden of proof, the government must prove that Mohammed provided something of pecuniary value to a person or organization engaged in terrorism/terrorist activity. In this case, the evidence will establish that: (1) Mohammed funneled or intended to funnel drug proceeds to himself individually and as a member of the Taliban; (2) he has engaged in terrorist activity; (3) he was a member of the Taliban; (4) the Taliban is a terrorist organization; and (5) Mohammed personally conspired to commit terrorist activity on behalf of the Taliban. Defendant's decision, at the direction of a Taliban superior, to help the CS purchase missiles/rockets for use in a terrorist attack *to be coordinated by the defendant* is evidence of terrorist activity.

Similarly relevant is Mohammed's membership in the Taliban, the operation of the Taliban as a terrorist organization, and the Taliban's structure. This evidence demonstrates that the Taliban generally, and Mohammed specifically, satisfy the statutory definition of an organization and/or individual having engaged in, or engaging in "terrorist activity."

Finally, Mohammed's prior drug trafficking is relevant in this case. The bulk of the evidence of Mohammed's prior drug trafficking comes directly from Mohammed during the recorded conversations; defendant made multiple statements in furtherance of the distributiion regarding his drug trafficking experience to assure the CS and an opium seller that he was an established, reliable, and knowledgeable drug trafficker who could provide the requested material. Mohammed provided similar comments to DEA agents in a post-arrest statement. Moreover, Mohammed's prior drug trafficking is intertwined with his terrorist activity, as the Taliban has historically funded its terrorist activity with drug proceeds. In this context, Mohammed's own boasting of his drug trafficking prowess is relevant evidence.

B.      The Probative Value of the Evidence is Not "Substantially Outweighed by the Danger of Unfair Prejudice"

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair evidence." Rule 403 "tilts . . . toward the admission of evidence in close cases," even when other crimes evidence is involved. United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002). The balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged. Id.

Defendant's cursory argument on prejudice, Mot. at 5, is insufficient to justify exclusion of the vaguely-identified evidence. Notably, defendant makes no effort to balance the significant

probative value with any potential prejudice.  Rather, defendant simply claims that "[t]he obvious prejudice accruing to Mr. Mohammed from any evidence suggesting that he was involved in the murky and violent (sic) of narcotics distribution is profoundly substantial."  Id.  Defendant's argument, however, begs the question – his involvement in the violent world of drug trafficking and terrorism is the crime.  Damaging evidence of guilt is not excludable simply because it is damaging; if that were sufficient, all evidence of guilt would be "prejudicial."  Because defendant fails to balance the probative value and potential prejudice and because the balance tips in favor of admitting the evidence, defendant's argument on prejudice must fail.

C.    The Evidence Relating to Terrorism is Not Excludable Under Rule 404(b), as it Relates Directly to an Element of Count Two, and Is Not Otherwise Inadmissible on Hearsay Grounds

With respect to the evidence involving terrorism, the government asserts that the evidence goes directly to an element of count 2, in that the government must show that the defendant knew or intended to provide something of pecuniary value to a person or organization who had engaged in (past tense) or is engaging in (present tense) terrorist activity or terrorism. As such, the government is required to show either that, in this case, the defendant had previously engaged in terrorism or that he was in the process of doing so, or that the defendant was part of an organization (the Taliban), that had previously engaged in terrorism or that he was in the process of doing so.

The evidence the government intends on producing concerning the defendant's personal activity not encompassed in the recordings essentially revolves around the CS's knowledge that the defendant had been a fighter for the Taliban and low level leader of other Taliban fighters while the government was in power, as well as evidence of the CS's recruitment and the direction he was given to contact the defendant.  The first form of evidence goes directly to an element of the offense- that

he was a member of an organization engaged in terrorism.  The second form of evidence- what the witness was told by Abdul Rahman concerning his mission and the identification of Khan Mohammed as his contact - is similarly relevant to establishing that the defendant was a member of the Taliban, and lays the foundation for his ongoing personal involvement in terrorist activities. Furthermore, this evidence is admissible both as a co-conspirator statement by Abdul Rahman and as adoptive admission by the defendant.

1.      The Evidence is Admissible as a Co-Conspirator Statement

"In order to admit co-conspirator statements, the trial judge must determine that a conspiracy existed, that the co-conspirator and the defendant against whom the statement is offered were members of the conspiracy, and that the statements were made in furtherance of the conspiracy." U.S. v. Perholtz., 842 F.2d 343 (D.C. Cir. 1988).  The law in this Circuit is clear that ". . . there is no requirement that a conspiracy be formally charged in the indictment." Id., citing Fed.R.Evid. 801 Senate Judiciary Committee notes and U.S. v. Jackson, 627 F.2d 1198, 1216 (D.C.Cir. 1980).[7] Consistent with this view is U.S. v. Gewin, 471 F.3d 197 (D.C. Cir. 2006), in which the court explained;

> Although Rule 801(d)(2)(E) refers to "conspiracy" and "coconspirators"-potentially giving Gewin's argument some force on first impression-our precedents hold that the doctrine is not limited to unlawful combinations.  Rather, the rule, based on concepts of agency and partnership law and applicable in both civil and criminal trials, "embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are ...

[7]That the  indictment need not charge a defendant with a conspiracy for coconspirator statements to be admissible is a position common in other circuits. See,  United States v. Doulin, 538 F.2d 466, 471 (2d Cir. 1976); United States v. Jones, 540 F.2d 465, 471 (10th Cir. 1976); United States v. Kendricks, 623 F.2d 1165 (6th Cir. 1980); United States v. Kendall, 665 F.2d 126, 131 (7th Cir. 1981).

> admissible against the others, if made in furtherance of the common goal."
> In support we quoted the 1974 Senate Advisory Committee note to Rule
> 801(d)(2)(E), which said that the rule was "*meant to carry forward the
> universally accepted doctrine that a joint venturer is considered as a
> coconspirator for the purpose of this [R]ule even though no conspiracy has
> been charged.*"

Id. at 201, (internal citations omitted, emphasis added), citing United States v. Weisz, 718 F.2d 413,

433 (D.C.Cir.1983).

In the present case, it is clear from the evidence that a conspiracy existed. A Taliban member in Pakistan recruited the CS to obtain weapons for the purpose of committing terrorist activity, and referred him to the defendant as a point of contact and coordinator of that activity. Second, it is apparent, from the defendant's own words, that the defendant, Rahman and Zai were members of that conspiracy. Initially you have Rahman referring the CS to the defendant as a point of contact and a coordinator for terrorist activity. More importantly, you have the defendant's own words, throughout Exhibit 1, in which he acknowledges his involvement with the others. When the CS inquired whether the defendant, Rahman and Zai were "(all three) together in this," meaning the plans to carry out attacks, the defendant responded "Abdul Rahman, Habibzai and our word [sic] are the same. We are his people and with him we make our program." Finally, when Rahman referred the CS to the defendant, it was done to further the conspiracy- by giving the CS a person he could contact for assistance and guidance in committing the attacks.

2.    The Evidence is Further Admissible as an Adoptive Admission under Fed.R.Evid 801(d)(2)(B)

Fed.R.Evid. 801(d)(2)(B) states that "A statement is not hearsay if . . . the statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." In the present case, even if the defendant had not been involved in a conspiracy with Rahman initially and was not aware that he had been identified as the point of contact for the CS, he adopted Rahman's statements when, in addition to other references in Exhibit 1, he agreed with the CS's account that "[t]he fact that I agreed to this operation, I swear that I did this because of you. My friend, if you were not with me in here, I would not have done this work at all and I would have been working to earn my living. *Based on the instruction of these people when they told me to work together with Khan Mohammed* and I said Khan Mohammed is my long time friend."

D.    The Evidence Relating to Prior Drug Activity is Not Excludable Under Rule 404(b)

Given the discussion at the April 30, 2008 hearing, the government understands that the sole evidence at issue here is the non-recorded information provided by the CS to the DEA concerning the defendant's prior experience with poppy growing and opium/heroin sales, which was the basis for the commencement of the DEA investigation of a drug crime. The government does not believe that this evidence is subject to Rule 404(b) analysis. In the event the Court disagrees, the government believes that this evidence would fall squarely within the rule, and would ask the Court to consider this as notice of an intent to offer such evidence.

1.    The Challenged Evidence is Direct Proof Related to an Element of the Crime and Background Evidence That Falls Outside the Strictures of Rule 404

Rule 404(b) precludes the admission of evidence regarding "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). As argued above, the evidence challenged by defendant is not evidence of "other crimes," but is evidence that directly satisfies one or more elements of 21 U.S.C. § 960a. "Evidence that constitutes the very crime being prosecuted" is not extrinsic evidence under Rule 404. United States v. Bowie, 232 F.3d 923, 927 (D.C. Cir. 2000).

Even if not direct evidence, such activity would fall outside the scope of Rule 404(b) under established jurisprudence admitting similar evidence. Under this jurisprudence, evidence of uncharged evidence is not "other crimes" evidence if it arose out of the same series of transactions as the charged offense or if it is necessary to complete the story of the crime on trial. United States v. Kennedy, 32 F.2d 876, 885 (4th Cir. 1994) (citing United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1089)). Thus, when evidence merely establishes background evidence or helps complete the story, Rule 404(b) does not apply. United States v. Orozco-Rodriguez, 220 F.3d 940, 942 (8th Cir. 2000). Background evidence includes evidence that explains the relationship of the parties or the circumstances surrounding an event. Id. Background evidence also includes evidence as to how a conspiracy came about, how it was structured, and how a person became a member. United States v. Lockey, 945 F.2d 825, 834 (5th Cir. 1991).[8]

The D.C. Circuit has phrased it in similar terms – Rule 404 excludes evidence that is "extrinsic" or "extraneous" to the charged crime. United States v. Badru, 97 F.3d 1471, 1474 (D.C.

---

[8]Although the D.C. Circuit took a narrow view of intrinsic evidence in a non-conspiracy case, prior activity was admitted under more liberal Rule 404(b). Bowie, 232 F.3d at 923.

Cir. 1996).  Evidence is not considered extrinsic or extraneous "if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime * * *."  Badru, 97 F.3d at 1474 (citing United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)). "As long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue, and not as circumstantial evidence of the character of the accused, it is admissible independent of its superficial similarity to that which would be considered evidence of 'other crimes' under Rule 404(b)."  United States v. Gray, 292 F. Supp. 2d 71, 77-78 (D.D.C. 2003) (Lamberth, J.) (citing Badru, 97 F.3d at 1475 (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239 at 450 (1978))).

Thus, even if this Court concludes that the challenged evidence does not directly prove an element of the charged offense, it is still admissible as background evidence and evidence of a fact in issue.  The evidence of prior poppy farming and opium and heroin trafficking is similar background evidence considering that defendant himself raised his past experience in the context of the charged criminal activity.  Kennedy, 32 F.3d at 885 (evidence of drug activity pre-dating the charged conspiracy and involving persons outside the charged conspiracy was admissible and did not constitute "other crimes evidence under Rule 404(b)); Orozco-Rodriguez, 220 F.3d at 942 (three prior drug sales by the defendant were admissible as background evidence); see also United States v. Chin, 83 F.3d 82, 88 (4th Cir. 1996)(evidence of prior drug distributions is considered "intrinsic" to the crime charged when the acts were necessary preliminaries to the crime charged).

12

2.      Even if Challenged Evidence Relates to "Other Crimes," it is Admissible Under Rule 404(b), and the Government Requests Leave to Treat This Filing as Notice.

In the event the Court finds that the challenged evidence constitutes "other crimes" evidence, it is still admissible under Rule 404(b).  The D.C. Circuit has a broad view in admitting other crimes evidence under Rule 404(b).  The Rule prohibits "evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  Although stated as a rule of restriction, the Rule is actually one of "inclusion rather than exclusion."  United States v. Cassell, 292 F.3d 788, 792 (D.C. Cir. 2002); Bowie, 232 F.2d at 929.  The rule is quite permissive, prohibiting the admission of other crimes evidence in only one circumstance – for the purpose of proving that a person's actions conform to his character.  Bowie, 232 F.2d at 929 (citing United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc)(Crowder II)); Cassell, 292 F.2d at 792; see also, United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir.).  Thus, evidence of a defendant's prior bad act is admissible for purposes unrelated to the defendant's character or propensity to commit crime, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b); Cassell, 292 F.3d at 792; Miller, 895 F.2d at 1436 ("[u]nder Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.").

i.      Two Prong Test/ Standard of Review - Generally

"Given this focus on inclusion," the court must conduct a two part analysis in determining the admissibility of other crimes evidence under Rule 404(b).  Cassell, 292 F.3d at 292.   First, a trial court must determine that the evidence of the extrinsic offense is relevant to an issue other than

13

the defendant's character.  Id.  (Rule 404(b) objection will not be sustained if the evidence of other crimes is relevant, relates to something other than character or propensity, and supports a jury finding that the defendant committed the other crime).  Second, the court must find that the evidence possesses probative value that is not substantially outweighed by undue prejudice.  Id. ("[o]nce past this first step, the evidence is admitted unless it is otherwise prohibited under any other 'general strictures limiting admissibility,' such as Rule 403.").  The trial court's decision will not be set aside absent an abuse of discretion.  Id; Bowie, 232 F.2d F.3d at 926-27 (the trial court is afforded "much deference on review.").[9]

  ii.  Evidence of Prior Drug Trafficking is Relevant

  In cases charging narcotic violations, evidence of prior drug transactions are relevant and admissible as evidence of a criminal defendant's intent, knowledge, a common scheme or plan, and absence of mistake.  United States v. Huff, 959 F.2d 731, 736-37 (8th Cir. 1992)(evidence of defendant's prior cocaine transaction was relevant to prove intent and common scheme or plan); United States v. Jones, 248 F.3d 671, 675 (7th Cir. 2001)(prior drug distribution is relevant to prove intent to distribute drugs and knowledge that a particular substance is a narcotic drug); United States v.Ono, 918 F.2d 1462 (9th Cir. 1990) (prior drug conviction relevant to show intent and knowledge); United States v. Latney, 108 F.3d 1446, 1448 (D.C. Cir. 1997)(404(b) analysis also applies to evidence of a later drug transaction and is relevant as evidence of the defendant's intent and knowledge).

---

  [9] There is no requirement that the court make a preliminary finding that the defendant committed the other crime; rather, the trial court need only determine that the evidence was offered for the proper purpose under Rule 404(b).  Huddleston v. United States, 485 U.S. 681, 689 (1988).

In this case, Mohammed's prior drug activity, which involved opium and heroin, is nearly identical to the charged offenses, in which defendant provided opium and heroin.  Thus, this evidence is relevant to show defendant's intent to distribute, his knowledge that the substance he was selling was opium and heroin, motive for profit, and common scheme or plan and absence of mistake.[10]

      iii.      Admission of the Evidence is not Prejudicial

As argued above, see § II, defendant makes no real showing that admission of the evidence will unfairly prejudice him.   There is no real likelihood that the jury will be confused by this particular evidence or draw unfair assumptions based on the evidence.  The government is not offering through the CS prior instances of conduct, but simply his knowledge of the defendant's prior connection to drug trafficking, which shows why the investigation went in that direction, as is proof of the defendant's intent, knowledge, motive, common scheme and absence of mistake. Moreover, to the extent there is any potential for prejudice or confusion, a limiting jury instruction at trial would be sufficient to ameliorate any potential prejudice.  Absent a specific and compelling demonstration of prejudice, exclusion of the evidence is unjustified.

      3.      The Evidence Should Not be Excluded for Lack of Notice

Because the evidence is not, in fact, "other crimes" evidence, the government was under no obligation to provide notice of its intent to use such evidence. Bowie, 232 F.3d at 927.  In the event, however, that this Court concludes that some or all of the challenged evidence falls under Rule 404(b), the government submits that notice has been sufficient in this case.  As defendant concedes,

---

[10]While the government is not going to raise them in it's case, the defendant previously told his military interviewers that he thought that the bags that he was seen holding in the video of the heroin transaction contained dried fruit, not heroin.

there is no specified time-line on the production of 404(b) evidence.  Mot. at 4 (citing Advisory Committee Notes).  The government must only provide "reasonable notice," United States v. Spinner, 152 F.3d 950, 961 (D.C. Cir. 1988), as determined by the district court.  In the context of this case, the notice has been reasonable.

Notice of the fact of the defendant's prior activity involving poppy, opium and heroin was provided early in the discovery phase of the case, where by his own words to the DEA and in his statements to the CS he acknowledged his prior experience in the trade.  On November 5, 2007, the government provided a cable summarizing defendant's statement to DEA, in which he admits that he had grown poppies up to two years prior to the interview and that he had sold opium when he needed money.  Drafts of the transcripts were provided to the defendant by January 2, 2008.  While the evidence at issue today is not those statements, but rather the statements of the CS, those statements are consistent with those already provided in discovery.  Because the defendant had full knowledge of this evidence, exclusion of the testimony for insufficient notice is unwarranted.  See United States v. Watson, 409 F.3d 458, 465 (D.C. Cir. 2005) (Rule 404(b) requires only general notice; notice on morning of testimony was sufficient when defendant failed to identify prejudice).

Exclusion is also unjustified because defendant does not, and cannot, establish any prejudice based on the timing of the notice.  See Watson, 409 F.3d at 465.  Again, most of the evidence comes from his own statements – he cannot be surprised either at the existence of the evidence or the government's desire to use it against him.  Accordingly, defendant's motion in limine should be denied.

CONCLUSION

In conclusion, the evidence the defendant's prior role as a Taliban fighter and the inception

16

of the terrorism-related investigation of him are relevant and admissible as direct evidence of an element of the offence, and are otherwise not precluded by the Rules of Evidence regarding hearsay. With respect to the reference to prior drug conduct as disclosed to the DEA by the CS, even if this evidence does not directly satisfy an element of the crime, it nonetheless falls outside the scope of Rule 404 because it provides background on the crime charged and explains the role played by defendant in it.  Because the evidence is not subject to Rule 404, the government was not obligated to provide notice.  In the event this Court concludes that the evidence does, in fact, qualify as "other crimes evidence," it is still admissible under the exceptions to that Rule 404(b) because it establishes defendant's knowledge, plan, and absence of mistake.  The government has provided reasonable notice that it intends to use such evidence in its case, and the defendant cannot identify any prejudice in learning, at this stage, that the evidence falls under Rule 404.


Respectfully submitted

KENNETH A. BLANCO, Chief
Narcotic and Dangerous Drug Section


_____/s/ Matthew Stiglitz_____
Matthew Stiglitz
Julius Rothstein
Trial Attorneys
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C.  20530
(202) 305-3646
matthew.stiglitz@usdoj.gov

17

Certificate of Service

I hereby certify that a copy of the foregoing motion was electronically filed this 1ˢᵗ day of May 2008 via ECF, which will forward a copy to Carlos Vanegas, Esq. And Dani Jahn, Esquire, counsel for the defendant.


_____/s/ Matthew Stiglitz_____
Matthew Stiglitz